CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 11 2013

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JASON THOMAS FREEMAN, ) | CASE NO. 7:12CV00168 |
| ) | |
| Petitioner, ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| ) | |
| BRYAN B. WATSON, WARDEN, ) | By: Glen E. Conrad |
| ) | Chief United States District Judge |
| Respondent. ) | |

Jason Thomas Freeman, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement under the 2008 judgment of the Botetourt County Circuit Court convicting him of abduction and related offenses. After review of the record, the court concludes that the respondent's motion to dismiss must be granted.

I

Freeman stood trial on March 7, 2008, before a jury in the Botetourt County Circuit Court on four felony charges: obstructing a law enforcement officer in the performance of his duties, in violation of Virginia Code § 18.2-460; breaking and entering with the intent to commit murder, rape, robbery, or arson, in violation of Virginia Code § 18.2-90; abduction, in violation of Virginia Code § 18.2-48; and attempting to impede the administration of justice, in violation of Virginia Code § 18.2-460(C) (Case Nos. CR07000318-00, CR07000319-00, CR07000320-00, and CR07000740-00). At trial, the jury heard the following evidence, presented in the light most favorable to the Commonwealth.

Dispatcher Teresa Huffman of the Botetourt County Sheriff's Department testified that she had taken a 911 call on March 24, 2007 at 2:49 p.m. Ms. Huffman verified the accuracy of

both a recording and a transcript of the 911 call which were then presented to the jury. The call ended when the line went dead, and Ms. Huffman was unable to make contact when she attempted to call back. During the call, the caller said that her ex-boyfriend was trying to get into her house, had been drinking, and had threatened her. The caller identified herself as Donna Liptrap and said that the ex-boyfriend was Jason Freeman and that he was kicking her door in. Ms. Huffman testified that the call lasted four to five minutes before the line went dead. The caller's last words to Ms. Huffman were, "Oh my God! My God! Stay away from me! (screaming)." (T 74).[1]

Deputy Travis Alderman testified that he was the first responder to arrive at the townhome address the dispatcher provided after the 911 call. Deputy Tolomeo arrived next and went to the back of the house. Alderman knocked several times on the front door and announced that he was from the Sheriff's Office, with no response from inside. Between knocks, Alderman heard someone run downstairs inside the house. No one came to the door, however. The deputies entered the townhouse through the backdoor and found Freeman in the living room. Freeman calmly asked the officers what they were doing there. Freeman told Alderman that Liptrap had let him into the home, he and Liptrap had been having sex upstairs, and she had started "freaking out." (T 89). Alderman asked Freeman if he had a knife, and Freeman produced a black and silver "locked blade knife" from his pants pocket. (T 91).

When advised that he was under arrest for breaking and entering, Freeman "took a defensive stance," and it took three officers to get his hands behind his back to handcuff him. (T 94, 114). Freeman would not cooperate, so the deputies forced him to walk out of the house and forced him into a patrol car, where Freeman kicked out a window. (T 95-97). Through Deputy

---

[1] Page references to the trial transcript of March 7, 2008, are denoted "(T ___)."

Alderman, the Commonwealth introduced a series of photographs depicting damage to the door of the townhouse. (T 98-102).

Deputy Tolomeo testified that on arriving at the townhouse, he saw a "hysterical woman" later identified as the victim, Donna Liptrap, "yelling from the second floor window." (T 123). Tolomeo's testimony also corroborated Deputy Alderman's account of events at the scene.

Donna Liptrap testified that Freeman had lived with her in the fall of 2006, but on Christmas Eve, Freeman got drunk and angry, and Liptrap told him to leave. In January 2007, Liptrap had the townhouse locks changed. A few weeks later, Freeman contacted Liptrap, said he was sorry, and promised to stop drinking. Liptrap testified that she started seeing Freeman again, because she thought he wanted to change, but said she did not give him access to the house or allow him to keep his belongings there. In March 2007, Liptrap and Freeman began arguing again over Freeman's continued drinking.

Liptrap testified that on March 24, 2007, she and Freeman had argued on the phone, after which he appeared at her townhouse and knocked on the door. She told him to leave or she would call the police; he replied that she should "go ahead, that he didn't care because by the time they got there [she] was going to be six feet under." (T 155). Freeman began kicking the door harder and harder, and Liptrap called 911. During the call, she heard "big thumps" and then heard Freeman coming up the stairs toward the second story bedroom from which she had dialed 911. (T 157-158). Freeman grabbed the cordless phone out of Liptrap's hand, took her by the wrists, dragged her to the bed, and told her to get undressed. When she said "no," he tried to unfasten her pants, but she "grabbed at them to hold them together. . . .[a]nd [ ] told him to stop, to just leave." (T 160). Freeman covered her mouth and nose and reached into his pocket, retrieving and opening a knife. After trying unsuccessfully to get away from Freeman, Liptrap

3

took her pants off, and Freeman dropped his pants. It was at that point that deputies arrived. Freeman put on his pants and ran down the stairs, where Liptrap heard him talking calmly to the deputies. After hearing Liptrap's account of what happened, the deputies asked her if she wanted Freeman placed under arrest, and she "told them yes." (T 165).

Liptrap testified that Freeman called her from jail and asked her to visit him. She did, hoping that he would have an explanation for his behavior and apologize. Freeman apologized, promised to stop drinking, and told her he wanted them to have a life together. Liptrap posted bond for Freeman, and they talked several times. Freeman told her about meetings with his attorney and what Liptrap would need to say "to get him off the charges." (T 169). Freeman wrote a letter and had Liptrap rewrite it in her words and give it to his attorney.

The jury heard a series of subsequent phone messages in which Freeman cursed Liptrap and made threats about what would happen to her and her family if the case went to trial. "You're making a bad mistake by sitting here pushing this court. Your only choice right now is . . . beg for that stuff to be dropped." (T 186).

The defense cross-examined Liptrap about the nature of her relationship and contacts with Freeman after the incident and her prior conviction for making a false statement. Counsel also questioned Liptrap about her diagnosis of bipolar disorder. Several witnesses testified for the defense about their observations of Freeman's positive qualities and of the relationship between Liptrap and Freeman. Freeman did not testify.

The jury found Freeman guilty on all four charges and recommended a fine of $2500 for obstruction of a law enforcement officer, seven years in prison for breaking and entering, 20 years in prison for abduction, and one year and six months in prison for attempting to impede the administration of justice. On August 21, 2008, the trial court imposed the sentences

4

recommended by the jury's verdict, giving Freeman an aggregate sentence of 28 years and six months in prison.

Freeman appealed. A judge of the Court of Appeals of Virginia denied Freeman's petition for appeal in a per curiam opinion on March 11, 2009, and a three-judge panel of the Court denied the petition on May 7, 2009. (Record No. 2237-08-3.)

Freeman then appealed to the Supreme Court of Virginia, which refused his petition for appeal on October 2, 2009, and denied his petition for rehearing on June 17, 2010. (Record No. 091131.)

On May 13, 2011, Freeman filed a petition for a writ of habeas corpus in the Botetourt County Circuit Court (Case No. CL1000255-00), presenting the following grounds for relief:

    A.    The evidence was insufficient.

    B.    Incriminating statements used against the petitioner at trial were illegally obtained.

    C.    Counsel provided ineffective assistance.

    D.    Donna Liptrap's refusal to respond to cross-examination deprived petitioner of his right to confrontation and compulsory process.

    E.    Joinder of the obstruction of justice charge with the other offenses for trial, and admission of the prejudicial recording and transcripts, deprived petitioner of an impartial trial.

    F.    Introduction of the photograph of a knife unrelated to the offenses charged violated petitioner's right to due process and a fair trial.

    G.    The trial court failed to follow sentencing guidelines and to provide a written explanation.

The circuit court entered a final order on September 7, 2011, granting the respondent's motion to dismiss and denying and dismissing the petition.

Freeman appealed to the Supreme Court of Virginia (Record No. 112108). The Supreme Court of Virginia dismissed Freeman's <u>habeas</u> appeal in part and refused it in part, by summary order dated April 2, 2012, stating:

> Upon consideration of the petition for appeal filed in this case, the Court finds that assignments of error Nos. 3 and 4 are insufficient to comply with the requirements of Rule 5:17(c)(1)(iii) as they fail to address the ruling of the court from which the appeal was taken and dismisses the petition as to those assignments of error. The Court refuses the petition for appeal as to the remaining assignments of error.[2]

In his timely filed § 2254 petition, Freeman alleges the following grounds for relief:[3]

A. Petitioner's counsel provided ineffective assistance by: (I) failing to comply with procedure for raising and preserving for appeal petitioner's claim of insufficient evidence; (II) failing to seek suppression of incriminating statements obtained in violation of petitioner's rights under <u>Miranda</u>[4]; (III) failing to object to or move to strike the testimony of Donna Liptrap as denying petitioner's right to confront this witness; and (IV) failing to move to sever the obstruction charge from the charges related to the incident on March 24, 2007.

B. Incriminating statements used against petitioner at trial were illegally obtained.

C. The evidence was insufficient.

---

[2] In his <u>habeas</u> appeal, Freeman set out the following assignments of error:

(1) The circuit court erred in finding that petitioner's <u>habeas</u> claims A, B, D, E, F, and G were not [procedurally defaulted], because petitioner attributed the fault of these claims to the negligence of counsel and ineffective assistance constitutes cause.

(2) The circuit court erred in finding that petitioner's trial counsel was not ineffective within the meaning of <u>Strickland</u>.

(3) Introduction of the photograph of a knife unrelated to the offenses charged violated petitioner's right to due process and a fair trial.

(4) The trial court failed to follow sentencing guidelines and to provide a written explanation.

[3] In listing Freeman's alleged grounds for relief, the court refers to his Memorandum in Support (DE 2), rather than his § 2254 form (DE 1), which does not provide a complete statement of his grounds.

[4] <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).

    D.      Donna Liptrap's refusal to respond to cross-examination violated petitioner's right to confrontation as guaranteed by the 6th Amendment.

    E.      Joinder of the charge of impediment of the administration of justice with the original offenses for trial, and the admission of the prejudicial recording and transcripts, violated petitioner's right to a fair trial before an impartial jury.

    F.      Introduction of the photograph of a knife unrelated to the offenses charged violated petitioner's right to due process and a fair trial.

    G.      The trial court abused its discretion in sentencing by failing to follow statutes and sentencing guidelines and failing to provide a written explanation.

(DE 2, at 7-12.) Respondent has filed a motion to dismiss, asserting that Freeman's claims are procedurally defaulted or present insufficient grounds for relief under § 2254(d). Freeman has responded, making the matter ripe for consideration.

## II

**A. Exhaustion and Default**

Absent a valid excuse, a state prisoner petitioner "must have 'fairly presented' to the state courts the 'substance' of his federal habeas corpus claim." Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 275, 277-78 (1971)). Petitioner has the burden to prove that he exhausted state court remedies as to each of his federal habeas claims. Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998) (omitting citations). If a state court expressly bases its dismissal of a habeas claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the federal version of that habeas claim is procedurally barred from review on the merits. Breard, 134 F.3d at 619 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and the [state court] would now find the

7

claim[ ] procedurally barred." Id. (citations omitted).  A state court's application of a procedural bar is a finding of fact entitled to the presumption of correctness.  28 U.S.C. § 2254(d); Stockton v. Murray, 41 F.3d 920, 924 (4th Cir. 1994).

A federal habeas court may review the merits of a procedurally defaulted claim only if petitioner demonstrates cause for the default and resulting prejudice or makes a colorable showing of actual innocence.  Breard, 134 F.3d at 620.  An error by counsel may serve as cause for a default, but only if petitioner demonstrates that the error was so egregious that it violated petitioner's constitutional right to the effective assistance of counsel.  Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000).

### Claim A: Exhausted Allegations of Ineffective Assistance

Freeman presented substantially the same ineffective assistance claims in his state habeas petition as he presents in Claim A of his § 2254 petition, and the state courts addressed these claims on the merits.  Thus, all subparts of Claim A are exhausted and may be addressed on the merits in this court, subject to the deference mandated under 28 U.S.C. § 2254(d).

### Claims B, C, D, and E: Unexhausted and Procedurally Defaulted

Freeman did not include a freestanding claim in his petition for appeal to the Supreme Court of Virginia on each of the issues raised in Claims B (incriminating statements), D (denial of confrontation), and E (misjoinder of offenses).  Because these claims were thus not raised to the state's highest court, they are unexhausted.  Breard, 134 F.3d at 619.  If Freeman now attempted to present these claims to the Supreme Court of Virginia, that court would dismiss

8

them on procedural grounds under Virginia Code §§ 8.01-654(A)(2) and 8.01-654(B)(2), respectively, as time-barred and successive.[5]

Freeman's Claim C, alleging insufficiency of the evidence, was never presented properly to the highest state court and is, therefore, unexhausted. In the Court of Appeals of Virginia, Freeman asserted that the evidence was insufficient to support his convictions for abduction and one count of obstruction, but did not challenge the evidence as to the remaining two convictions. The Court ruled that Freeman's sufficiency claims had not been preserved at trial and were procedurally barred on appeal under Virginia Supreme Court Rule 5A:18, Virginia's contemporaneous objection rule. On direct appeal to the Supreme Court of Virginia, Freeman did not assign as error the Court of Appeals' refusal to find the evidence insufficient, but instead assigned error to the reasons the Court of Appeals cited for denying the appeal. Freeman also failed to assert a sufficiency claim to the Supreme Court of Virginia during the state habeas proceedings. If Freeman now attempted to present the sufficiency claim to the Supreme Court of Virginia, that court would dismiss it as time-barred and successive, under §§ 8.01-654(A)(2) and 8.01-654(B)(2).

For the reasons stated, Claims B, C, D, and E are procedurally defaulted and barred from review of the merits in this court,[6] absent a showing of cause and prejudice or actual innocence.

---

[5] The Fourth Circuit has recognized the successive petition bar in § 8.01-654(B)(2) as an adequate and independent state law ground barring federal habeas review. See, e.g., Pope v. Netherland, 113 F.3d 1364, 1372 (4th Cir. 1997); Gray v. Netherland, 99 F.3d 158, 163 (4th Cir. 1996). The United States Supreme Court has held that a state statute of limitations may be an independent and adequate state law ground barring federal habeas review, and § 8.01-654(A)(2) is such a statute. See Walker v. Martin, 131 S. Ct 1120, 1130-31 (2011).

Moreover, the circuit court dismissed the issues raised in federal Claims B, D, and E as procedurally defaulted under the rule in Slayton v. Parrigan, 205 S.E.2d 680, 682 (1974), because Freeman failed to raise these issues on direct appeal; the Supreme Court of Virginia found no error in this procedural ruling. This state court finding of default also bars federal review of the claims. Breard, 134 F.3d at 619; see also Ylst v. Nunnemaker, 501 U.S. 797, 806 (1991) (recognizing a presumption that where there has been one reasoned state court judgment rejecting a federal claim on procedural grounds, later unexplained orders upholding that judgment or rejecting that same claim rest upon the same ground).

9

Breard, 134 F.3d at 619-20. In Claim A, Freeman asserts separate claims of ineffective assistance, which he also offers as cause for his default of Claims B, C, D, and E. As discussed separately, however, Freeman fails to establish that counsel's alleged errors rose to the level of constitutional violations as required to show cause. Edwards, 529 U.S. at 451-52. He also fails to make an adequate showing of actual innocence so as fall under that exception to default.[7] Accordingly, the court will grant the motion to dismiss Claims B, C, D, and E as procedurally barred from federal review.

### Claims F and G: Exhausted and Procedurally Defaulted

Freeman presented Claims F (knife photo) and G (sentencing errors) as Assignments of Error 3 and 4 in his habeas appeal to the Supreme Court of Virginia. Therefore, these claims are exhausted. The Supreme Court of Virginia dismissed these assignments of error on procedural grounds, however, after finding that they failed to comply with the Court's Rule 5:17(c)(1)(iii). "An assignment of error that does not address the findings or rulings in the trial court or other tribunal from which an appeal is taken, is not sufficient" and shall be grounds for dismissal of the appeal. Sup. Ct. Va. Rule 5:17(c)(1)(iii). The Fourth Circuit has held that Rule 5:17(c) is an adequate and independent state procedural ground barring federal habeas review of the underlying constitutional claim. See Hedrick v. True, 443 F.3d 342, 363 (4th Cir. 2006). Consequently, Claims F and G are procedurally defaulted and barred from review on the merits

---

[6] During habeas proceedings, the circuit court dismissed Freeman's sufficiency claim as procedurally defaulted under Slayton, 205 S.E.2d at 682, because he failed to raise it properly at trial and on appeal, and the Supreme Court of Virginia found no error in this procedural ruling. This state court finding of default also bars federal review of Claim C. Breard, 134 F.3d at 619.

[7] A district court determines the merits of all procedurally defaulted claims if it finds a fundamental miscarriage of justice exists because the petitioner is actually innocent. Teleguz v. Pearson, 689 F.3d 322, 329 (4th Cir. 2012). "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new [and reliable] evidence [not presented at trial], it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006). Freeman makes no such showing.

in this court,[8] absent a showing of cause and prejudice or actual innocence.[9] Breard, 134 F.3d at 619-20. As Freeman fails to show cause or actual innocence, the court will grant the motion to dismiss Claims F and G as procedurally barred from federal review.

### B. Standard of Review for Adjudicated Claims

Under 28 U.S.C. § 2254(d), the federal habeas court must give deference to state court rulings on the merits of petitioner's claims. The federal court may grant habeas relief only if the state court's adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d); see also Williams v. Taylor, 529 U.S. 362, 403-13 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.__, __, 131 S. Ct. 770, 786 (2011) (omitting internal quotations).

### C. Claims of Ineffective Assistance of Counsel

To state a constitutional claim for ineffective assistance, petitioner must satisfy a two-prong test by showing (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 686-87 (1984). Petitioner must overcome "a strong presumption" that counsel's performance was reasonably competent, and the court may adjudge counsel's performance deficient only when petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside

---

[8] Claims F and G are also barred from federal habeas review based on the circuit court's dismissal of these habeas claims as procedurally defaulted under Slayton, 205 S.E.2d at 682, because Freeman failed to raise them properly at trial and on appeal. See Breard, 134 F.3d at 619.

[9] In any event, Claims F and G allege violations of state law regarding admission of evidence and sentencing; such state law violations do not present grounds for federal habeas relief. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law.").

the wide range of professionally competent assistance." Id. at 689-90. Even if petitioner can establish deficient performance under this high standard, relief remains unavailable unless he also shows a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. Id. at 694-95. The court must deny relief if petitioner fails to establish either of the Strickland prongs. Id. at 697. This same two-part standard also applies to claims that counsel's representation during appeal proceedings was ineffective. See Smith v. Robbins, 528 U.S. 259, 289 (2000).

As stated, the Supreme Court of Virginia denied Freeman's habeas appeal in a summary order affirming the circuit court's reasoned decision that his ineffective assistance claims were without merit under Strickland. Therefore, the federal habeas court "looks through" the higher court's order to review the reasonableness of the circuit court's rulings. Ylst, 501 U.S. at 806. Because Freeman fails to demonstrate that the circuit court's adjudication of his claims was unreasonable, as required under § 2254(d) to warrant habeas relief, the court must grant the motion.

### Claim A(I): Failure to preserve sufficiency of the evidence issue

A motion to strike at the close of all the evidence requires the trial court to determine whether the evidence, taken in the light most favorable to the nonmoving party, states a prima facie case. Kiddell v. Labowitz, 733 S.E.2d 622, 632 (Va. 2012). If conflicts exist in the "testimony on a material point, or if reasonably fair-minded [persons] may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent on the weight to be given to the testimony, a jury issue exists," and the court must deny the motion to strike. Id. (internal quotations omitted). That same standard applies when an appellate court reviews the trial court's decision to deny the motion to strike. Id. (omitting citation). "It is well

settled in Virginia that the credibility of witnesses and the weight to be given their testimony are questions exclusively for the jury." Coppola v. Commonwealth, 257 S.E.2d 797, 803 (Va. 1979).

The Court of Appeals of Virginia found that Freeman's claims of insufficiency of the evidence were barred because counsel failed to preserve them properly for appeal.[10] In his state habeas petition, Freeman asserted that counsel was constitutionally ineffective for failing to comply with required procedures to preserve and raise the sufficiency issue for appeal. The circuit court dismissed the claim, finding that even if Freeman could show that counsel performed deficiently in failing to preserve his sufficiency claim, nevertheless, his ineffective assistance claim failed under the prejudice prong of Strickland and Smith, supra. The circuit court cited specific evidence supporting a finding of guilt on each of the four charges and quoted the trial court's finding that the evidence was sufficient to support findings of guilt on all charges; based on this record, the circuit court found no reasonable probability that but for counsel's errors, the trial court would have struck the evidence or the outcome of the appeal would have been different.

The court agrees. Taking the evidence in the light most favorable to the prosecution, the prosecution presented a prima facie case as to each charge.

Breaking and entering with intent to commit rape required proof that the defendant "in the daytime breaks and enters . . . a dwelling house ... with intent to commit rape." Va. Code Ann. § 18.2-90. The abduction charge required proof that the defendant "by force [or]

---

[10] Counsel moved to strike at the close of the Commonwealth's evidence, but failed to renew that motion or make a new motion to strike at the end of the defense case; after the verdict, counsel moved for dismissal notwithstanding the verdict as to all four charges, but did not offer further argument or renew his earlier motion to strike. To preserve the question of sufficiency for appeal, a defendant must move to strike at the conclusion of all the evidence or make a motion to set aside the verdict, with specificity, or the issue of sufficiency must be deemed waived. McQuinn v. Virginia, 460 S.E.2d 624, 626 (Va. 1995) (en banc); Mounce v. Virginia, 357 S.E.2d 742, 744 (Va. App. 1987).

13

intimidation . . . seizes, takes, [or] detains another person with the intent to deprive [her of] personal liberty" and "with intent to defile such person." Va. Code Ann. §§ 18.2-47, 18.2-48. Liptrap testified that she had ordered Freeman out of the house in December 2006, had changed the locks, and had not thereafter provided him a key. She also testified that on March 24, 2007, after Freeman threatened her during a telephone conversation, he arrived, uninvited, at her door; when she refused him entry, he began kicking the door, prompting her to call 911, and the jury heard the tape of the call, including Liptrap's report that Freeman had kicked in the door and her screams begging Freeman to stay away from her. Liptrap testified that Freeman burst into her bedroom, forced her to the bed, produced a knife, and forced her to undress, while trying to remove his pants.

The charge of felony obstruction related to events on March 24, 2007, required proof that the defendant by "force knowingly attempt[ed] to . . . impede . . . any law-enforcement officer, lawfully engaged in the discharge of his duty, . . . relating to the violation of . . . any violent felony offense."[11] Va. Code Ann. § 18.2-460(C). Liptrap and the deputies who arrested Freeman for breaking and entering testified that he fought to prevent the deputies from escorting him to the police car, so that they had to move him there by force, and that once in the car, Freeman kicked out its back window, requiring the officers to forcibly remove him from that vehicle and place him in another vehicle to transport him from the scene.

The charge of obstruction related to Freeman's telephone calls to Liptrap after March 24, 2007, required proof that he "by threats of bodily harm . . . knowingly attempt[ed] to intimidate or impede a . . . witness . . . or to impede the administration of justice in any court . . . relating to . . . any violent offense," including abduction or breaking and entering. Va. Code Ann.

---

[11] The list of violent felony offenses in Virginia Code Annotated § 17.1-805(C) includes breaking and entering, § 18.2-90, and abduction, § 18.2-48.

14

§§ 18.2-460(C), 18.2-17.1-805(C). The jury heard four recorded telephone messages in which Freeman threatened Liptrap and her family before the trial.

This evidence presented by the Commonwealth stated a prima facie case as to each charge. Therefore, the court finds no reasonable probability that the trial court would have sustained Freeman's renewed motion to strike or set aside the verdict, even if counsel had properly raised such a motion. Kiddell, 733 S.E.2d at 632. Freeman's primary argument is that Liptrap's incriminating version of events was not believable, based on her contradictory conduct and statements about Freeman between his arrest and the trial. This credibility determination rests with the jury, however, not with the trial court in deciding a motion to strike or an appellate court reviewing denial of a motion to strike. Coppola, 257 S.E.2d at 803. Therefore, Freeman's ineffective assistance claim fails under the prejudice prong of Strickland. 466 U.S. at 697. Because the state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts, the court must grant the motion to dismiss under § 2254(d) as to Claim A(I).

**Claim A(II): Failure to suppress statements**

In Miranda, the Supreme Court held that the defendant's statements during custodial interrogation may not be used against him unless he was informed of his privilege against self-incrimination. 384 U.S. at 444. For a statement to be excludable under Miranda, it must have been incriminating and must have been made incident to a custodial interrogation. See Beckwith v. United States, 425 U.S. 341, 345-46 (1976).

Freeman argues in Claim A(II) that counsel should have moved under Miranda to suppress statements Freeman made to police. He argues that his general conversation with the

deputies in the living room constituted custodial interrogation subject to Miranda protections. See Miranda, 384 U.S. at 444 (defining custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way").

The Botetourt Circuit Court found no merit to this claim under Strickland. Trial counsel stated that he was unaware of any statements Freeman had made that were subject to exclusion under Miranda, and the Court found no such statement reflected in the record or specified in Freeman's state habeas petition. Finding no factual basis for the claim, the Court ruled that counsel's failure to move for suppression was neither deficient performance nor prejudicial under Strickland.

In his federal petition, Freeman also fails to identify any particular incriminating statement that counsel should have moved to suppress. Even if Freeman could demonstrate that the living room discussion with deputies was custodial interrogation, he fails to demonstrate any strategic reason for counsel to move for suppression of any particular statement or to show any reasonable likelihood that the outcome of the trial would have been different if testimony about that discussion had been excluded. Because Freeman's ineffective assistance claim thus fails under both prongs of Strickland, the state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, the court must grant the motion to dismiss under § 2254(d) as to Claim A(II).

16

### Claim A(III): Failure to raise a confrontation objection

The Sixth Amendment's Confrontation Clause promises a criminal defendant the right to cross-examine the witnesses against him. Douglas v. Alabama, 380 U.S. 415, 418 (1965). This protection gives the defendant an opportunity through cross-examination,

> not only of testing the recollection and sifting the conscience of the witness, but of compelling [her] to stand face to face with the jury in order that they may look at [her], and judge by [her] demeanor upon the stand and the manner in which [s]he gives h[er] testimony whether [s]he is worthy of belief.

Id. at 419 (internal quotations omitted).

In Claim A(III), Freeman faults counsel for failing to object to, or to move for exclusion of, Liptrap's testimony because in response to some questions put to her during cross-examination, she said she did "not recall" or could "not remember." Freeman claims that such responses deprived him of his right to effectively cross-examine Liptrap.

The Botetourt Circuit Court, in addressing this claim on habeas, found:

> A review of the record shows that counsel's cross-examination of Donna Liptrap consumed 80 pages of the trial transcript . . . The record shows this cross-examination was extremely effective, eliciting numerous admissions from her that arguably affected her credibility and contradicted other statements by her. Nevertheless, the jury credited her account of the offenses.
> The record refutes the notion that [Freeman] was denied the right "to effectively cross-examine" Liptrap. [Freeman] has failed to identify any legal basis for counsel to exclude her testimony, or any basis for counsel to compel Liptrap to give the answers he wanted her to give.

(Case No. CL1000255-00, Order, at 11-12, September 7, 2011.) The Court held that Freeman had not provided a factual or legal basis for his claim and dismissed it as without merit under both facets of Strickland.

As the state habeas court pointed out, counsel's cross-examination of Liptrap elicited substantial impeachment information, particularly about the contradictory nature of her continuing relationship with Freeman after the offenses. This record reflects no reasonable

17

probability that a motion to exclude Liptrap's testimony would have succeeded. Moreover, the court finds no respect in which counsel's cross-examination of Liptrap deprived Freeman of his right to confront Liptrap as his accuser as defined in Douglas, 380 U.S. at 418. Thus, the court agrees that Claim A(III) fails under both prongs of Strickland. The state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, the court must grant the motion to dismiss under § 2254(d) as to Claim A(III).

**Claim A(IV): Failure to move for severance or exclusion of evidence**

In this claim, Freeman argues that counsel should have moved to sever the obstruction of justice charge, based on his post-arrest threats against Liptrap and her family, from the charges related to the incident on March 24, 2007. Freeman asserts that these charges were unrelated and that trying them together allowed the prosecution to present evidence of the threatening telephone messages, which prejudiced the jury against him unfairly in relation to the other charges. He also alleges that counsel should have objected to this evidence as inadmissible evidence of "other crimes."

The Botetourt Circuit Court found that trying all four charges together was consistent with Virginia law. See Sup. Ct. Va. Rule 3A:6 (allowing two or more offenses to be charged in separate counts of an indictment "if the offenses . . . constitute parts of a common scheme or plan"). The Court also found that under Virginia law, evidence of the threatening messages was admissible because it was connected to the original offenses and showed Freeman's conduct and feelings toward the victim and the nature of his prior relationship with her. See Kirkpatrick v. Commonwealth, 176 S.E.2d 802, 805 (Va. 1970). Because counsel had no valid legal basis on which to request severance of the obstruction charge or exclusion of the evidence in question, the

state courts held that Freeman's ineffective assistance claim failed under both prongs of Strickland.

This court cannot second guess the state courts' rulings on the proper interpretation of Virginia law regarding the severance issue or the admissibility of evidence. See Estelle, 502 U.S. at 67-68 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Because counsel had no valid basis for the objections Freeman proffers, counsel's failure to pursue such objections was neither deficient conduct nor prejudicial under Strickland. The state courts' adjudication of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Therefore, the court must grant the motion to dismiss under § 2254(d) as to Claim A(IV).

### III

For the reasons stated, the court grants the motion to dismiss and dismisses Freeman's § 2254 petition. An appropriate order will enter this day.

Petitioner is advised that he may appeal this decision, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if a judge of the United States Court of Appeals for the Fourth Circuit or this court issues a certificate of appealability, pursuant to 28 U.S.C. § 2253(c). A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. § 2253(c)(1). The court finds that petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right" and therefore, the court declines to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure. See Miller-El v. Cockrell, 537 U.S. 322 (2003); Slack v. McDaniel, 529 U.S. 473 (2000). If petitioner intends to appeal and seek a certificate of appealability from

the Fourth Circuit, his first step is to file a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and counsel of record for the respondent.

ENTER: This 11th day of February, 2013.

/s/ Glen Conrad
Chief United States District Judge